LAW OFFICE OF MICHAEL L. FRADIN
Michael L. Fradin, Esq.
8401 Crawford Ave. Ste. 104
Skokie, IL 60076
Telephone: 847-986-5889
Facsimile: 847-673-1228
Email: mike@fradinlaw.com

Attorney for Plaintiffs

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| **Alexey Chacon**, individually and on behalf of all others similarly situated, | No. |
| Plaintiffs, | **COLLECTIVE AND CLASS ACTION COMPLAINT** |
| v. | |
| **OnPoint Roadside Express, LLC**, an Illinois Corporation, d/b/a **G&B Assistance;** and **Gregory C. Tate, III**. | |
| Defendants. | |

Plaintiff, Alexey Chacon ("Plaintiff"), and behalf of himself and all others similarly situated sues the Defendants, OnPoint Roadside Express, LLC, doing business as G&B Assistance (hereafter "OnPoint") and Gregory C. Tate, III (hereafter "Defendant Tate") (collectively "Defendants") and alleges as follows:

## PRELIMINARY STATEMENT

1.      This is an action for unpaid wages, liquidated damages, attorneys' fees, costs, and interest under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq., Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105/1, *et seq*., Illinois Wage Payment and Collection Act ("IWPCA"), 820 115/1 *et seq.* and Fed. R. Civ. P. 23 for Defendants' failure to pay Plaintiff and other similarly-situated employees all earned minimum and overtime wages.

-1-

2.      The FLSA was enacted "to protect all covered workers from substandard wages and oppressive working hours." <u>Barrentine v. Ark Best Freight Sys. Inc.</u>, 450 U.S. 728, 739 (1981). Under the FLSA, employers must pay all non-exempt employees one and one-half their regular rate of pay for all hours worked in excess of 40 hours in a workweek.  <u>See</u> 29 U.S.C § 207.

3.      The IMWL establishes the law regarding minimum wage and overtime within the State of Illinois.

4.      Under the IWPCA, "[a]n employer shall reimburse an employee for all necessary expenditures or losses incurred by the employee within the employee's scope of employment and directly related to services performed for the employer." 820 ILCS 115/9.5(a)

5.      Plaintiff brings this action on behalf of himself and all similarly-situated current and former employees of Defendants who worked as Drivers[1] and were classified by Defendants as independent contractors.

6.      Plaintiff, individually, and on behalf of all others similarly-situated, brings this action against Defendants for their unlawful failure to pay minimum wage and overtime in violation of the Fair Labor Standards Act, 29 U.S.C. § 201-219 (the "FLSA").

7.      Plaintiff, individually, and on behalf of all others similarly-situated, brings this action against Defendants for their unlawful failure to pay minimum wage and overtime due and owing Plaintiff and others similarly-situated in violation of the IMWL.

8.      Plaintiff, individually, and on behalf of all others similarly situated, brings this action against Defendants for their unlawful failure to reimburse expenditures or losses incurred

---

[1]      For the purposes of this Complaint, "Drivers" is exclusively a job title used for the purpose of classifying the putative class of similarly situated individuals, is not necessarily the job title of the Plaintiff and putative class, and has no bearing or relation to any specialization, skill, education, training, or other qualification that might otherwise be associated with such a job title.

by the employee within the employee's scope of employment and directly related to services performed for the employer in violation of the IWPCA.

9.      Plaintiff brings a collective action under the FLSA to recover the unpaid overtime owed to him individually and on behalf of all other similarly-situated employees, current and former, of Defendants.  Members of the Collective Action are referred to as the "Collective Members."

10.      Additionally, Plaintiff brings a class action under the IMWL and pursuant to Federal Rule of Civil Procedure 23.  Members of the IMWL Rule 23 Class Action are referred to as the "IMWL Class Members."

11.      Additionally, Plaintiff brings a class action under the IWPCA and pursuant to Federal Rule of Civil Procedure 23. Members of the IWPCA Rule 23 Class Action are referred to as the "IWPCA Class Members."

12.      Members of the IMWL Rule 23 Class and IWPCA Rule 23 Class are referred to collectively as "the Class Members."

13.      The Collective Members are all current and former employees who worked as Drivers for Defendants and were classified as independent contractors at any time starting three years before this Complaint was filed, up to the present.

14.      The IMWL Class Members are all current and former employees who worked as Drivers for Defendants in the State of Illinois and were classified as independent contractors at any time starting three years before this Complaint was filed, up to the present.

15.      The IWPCA Class Members are all current and former employees who worked as Drivers for Defendants in the State of Illinois and were not reimbursed for gas, mileage,

maintenance, and other necessary expenditures incurred in their work for Defendants at any time starting ten years before this Complaint was filed up to the present.

16.     Defendants operate as OnPoint Roadside Express which provides roadside assistance services to their customers in the greater Chicago area. *See* https://onpointrs.net/ (last visited May 11, 2022).

17.     Defendants have also held themselves out the Plaintiff and the public as G & B Assistance.

18.     At all relevant times, Defendants have operated pursuant to a policy and practice of intentionally misclassifying Plaintiff and all other similarly-situated employees as independent contractors.

19.     At all relevant times, pursuant to this misclassification, Defendants have willfully refused to pay minimum wage and overtime.

20.     At all relevant times, Defendants have refused to reimburse Plaintiff and other similarly situated employees for gas, mileage, maintenance, and other necessary expenditures incurred in their work for Defendants.

## JURISDICTION AND VENUE

21.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 201, *et seq*. because this civil action arises under the Constitution and law of the United States.  This Court also has subject matter jurisdiction pursuant 28 U.S.C. § 1367 because the state law claims asserted herein are so related to claims in this action over which this Court has subject matter jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

22.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(ii) because acts giving rise to the claims of Plaintiff occurred within the Northern District of Illinois, and Defendants regularly conduct business in and have engaged in the wrongful conduct alleged herein – and, thus, are subject to personal jurisdiction in – this judicial district.

## PARTIES

23.     At all material times, Plaintiff is an individual residing in Cook County, Illinois, and is a former employee of Defendants.

24.     At all material times, Plaintiff regularly performed work for Defendants in Cook County, Illinois.

25.     Plaintiff has given his written consent to be a party to the action pursuant to 29 U.S.C. § 216 which is attached hereto as Exhibit A.

26.     At all material times, Defendant OnPoint Roadside Assistance, LLC is an Illinois limited liability company licensed to transact business in the State of Illinois and has at times relevant herein also done business as "G&B Assistance."  At all material times, OnPoint does business, has offices, and/or maintains agents for the transaction of its customary business in Cook County, Illinois.

27.     At all relevant times, OnPoint was Plaintiff's employer under the FLSA, IMWL and IWPCA.  At all relevant times, OnPoint had the authority to hire and fire employees, supervised and controlled work schedules or the conditions of employment, determined the rate and method of payment, and maintained employment records in connection with Plaintiffs' employment with Defendants.  As a person who acted in the interest of Defendants in relation to the company's employees, OnPoint is subject to liability under the FLSA, IMWL and IWPCA.

28.     At all material times, Defendant Tate was the owner and operator of OnPoint. At all material times, Defendant Tate was Plaintiff's employer under the FLSA, IMWL and IWPCA. Defendant Tate had the authority to hire and fire employees, supervised and controlled work schedules or the conditions of employment, determined the rate and method of payment, and maintained employment records in connection with Plaintiffs' employment with Defendants. As a person who acted in the interest of Defendants in relation to the company's employees, Defendant Tate is subject to liability under the FLSA, IMWL and IWPCA.

29.     Plaintiff, in his work for Defendants, was employed by an enterprise engaged in commerce that had annual gross sales of at least $500,000.

30.     At all relevant times, Plaintiff, in his work for Defendants, was engaged in commerce or the production of goods for commerce.

31.     At all relevant times, Plaintiff, in his work for Defendants, was engaged in interstate commerce.

32.     Plaintiff, in his work for Defendants, regularly handled goods produced or transported in interstate commerce.

## NATURE OF THE CLAIM

33.     OnPoint provides roadside assistance such as tire changes, fuel delivery, jump starts and lockout services to its customers. *See* https://onpointrs.net/ (last visited May 11, 2022).

34.     Drivers, including Plaintiff are required to answer calls from Defendants' dispatch, which routes Drivers to service calls for Defendants' customers who need roadside assistance.

35.     Upon hiring Plaintiff and other Driers, Defendants directed them to go to Defendants' selected retail provider in order to obtain necessary tools for the job such as a lockout kit, jack kit, and high visibility vest. Defendants advance the costs for these tools.

36.     Defendants tell their Drivers, including Plaintiff, when and where to be at all times throughout their workday.

37.     Defendants do not permit their Drivers, including Plaintiff, to decline service calls.

38.     If Plaintiff were to decline a service call, it was Plaintiff's understanding that he would face discipline, including termination.

39.     Defendants set Plaintiff's and their other Drivers rates of pay at all times.

40.     Rather than pay Plaintiff and its other Drivers by the hour, Defendants pay Plaintiff and their other drivers a flat rate per service call ranging from $9.00 to $11.00 per call.

41.     Defendants regularly expect Plaintiff and their other drivers to work a six-day week. At times, Defendants would require Plaintiff to take calls on his scheduled day off.

42.     Plaintiff was hired by Defendants and worked for Defendants as a Driver from approximately July 1, 2021 through approximately January 21, 2022.

43.     At all relevant times, Plaintiff worked in excess of forty (40) hours per week.

44.     At all relevant times, Plaintiff routinely worked for Defendants in excess of sixty (60) hours per week.

45.     Rather than classify Plaintiff as an employee, Defendants classified him as an independent contractor.

46.     Consistent with Defendants' common policy and practice, Plaintiff and others similarly situated individuals have been intentionally misclassified by Defendants as independent contractors in and effort by Defendants to minimize labor costs and maximize profits.

47.     The FLSA, IMWL and IWPCA apply to Plaintiff and all individuals similarly situated at all times during which they worked for Defendants.  No exceptions or exemptions to the FLSA, IMWL or IWPCA apply to Plaintiffs and those similarly situated.

-7-

48.     Upon information and belief, Defendants employed hundreds of Drivers throughout the relevant time period without paying overtime, and while denying them the rights and benefits due an employee.

49.     At all relevant times, Defendants directly or indirectly exercised significant control over the wages, hours, and working conditions of Plaintiff and similarly situated individuals.

50.     At all relevant times, the employment terms, conditions, and policies that applied to Plaintiff were the same as those applied to other putative Collective Members and Class Members who also worked as Drivers for Defendants.

51.     Plaintiff, the Collective Members and the Class Members incurred financial loss, injury, and damage as a result of Defendants' business practice of misclassifying them as independent contractors and failing to pay them a minimum wage and overtime pay.

52.     Defendants' misclassification of Plaintiff, the Collective Members and the Class Members was willful.

53.     Defendants knew or should have known that it was improper to classify Plaintiff, the Collective Members and the Class Members as independent contractors.

54.     Plaintiff, the Collective Members and the Class Members cannot "elect" to be treated as employees or independent contractors.  Despite this, Defendants unfairly, unlawfully, fraudulently, and unconscionably attempted to coerce workers in the putative Collective and Class to waive their statutory rights and elect to be treated as independent contractors.

55.     Any contract which attempts to have workers in the putative Collective and Class waive, limit, or abridge their statutory rights to be treated as an employee under the FLSA or other applicable wage and hour laws is void, unenforceable, unconscionable, and contrary to public policy.

56.     The determining factor as to whether Plaintiff and those similarly situated are employees or independent contractors under the FLSA is not the workers' elections, subjective intent, or any contract.  Rather, the test for determining whether an individual is an "employee" under the FLSA is the economic reality test.  *See Rutherford Food Corp. v. McComb*, 331 U.S. 722, 727 (1947).  Under the economic reality test, employee status turns on whether the individual is, as a matter of economic reality, in business for herself and truly independent, or, rather, is economically dependent upon finding employment in others.

57.     Under the applicable test, court use the following factors to determine economic dependence and employment status: (1) the degree of control exercised by the alleged employer; (2) the relative investments of the alleged employer and employee; (3) the degree to which the employee's opportunity for profit and loss is determine by the employer; (4) the skill and initiative required in performing the job; (5) the permanency of the relationship; and (6) the degree to which the alleged employee's tasks are integral to the employer's business.

58.     The totality of circumstances surrounding the employment relationship between Defendants, Plaintiff, the Collective Members and the Class Members establishes economic dependence on Defendants and employee status. Plaintiff, the Collective Members and the Class Members are not in business for themselves and truly independent, but rather are economically dependent upon Defendants.  The putative Collective and Class are not engaged in occupations or businesses distinct from that of Defendants.  Instead, Plaintiff, the Collective Members and the Class Members are the basis for Defendants' business.  Defendants retain pervasive control over the business operation as a whole, and putative Collective and Class.

**Degree of Control Exercised by Defendants**

59.     Plaintiff, the Collective Members and the Class Members do not exert control over any meaningful part of Defendants' business operation and do not stand as a separate economic entities from Defendants.  Defendants exercise control over all aspects of the working relationship with Plaintiff, the Collective Members and the Class Members.

60.     Plaintiff's, the Collective Members', and the Class Members' economic status is inextricably linked to conditions over which Defendants have complete control, including without limitation advertising and promotion, business and financial relationships with customers, business and financial relationship with insurers, and customer volume.

61.     Defendants exercise the following significant control over the work conditions of Plaintiff, the Collective Member and the Class Members:

    a.      Defendants require Plaintiff, the Collective Member and the Class Members to routinely work in excess of 40 hours per week;

    b.      Defendants pay Plaintiff, the Collective Members and the Class Members a flat predetermined rate for the roadside services that Plaintiff, the Collective Members and the Class Members provide Defendants' clients;

    c.      Defendants direct Plaintiff, the Collective Members, and the Class Members with respect to where and when to work;

    d.      Defendants require Plaintiff, the Collective Members and the Class Members to wear a high visibility vest;

    e.      Defendants requires Plaintiff, the Collective Members, the Class Members to purchase a list of tools from Defendants' selected retail provider and Defendants advance the cost of the same; and

-10-

  f.  Plaintiff, the Collective Members and the Class Members do not use their own tools or equipment.

**Facts Establishing Defendants' Drivers are not in Business for Themselves**

62.  Plaintiff, the Collective Members and the Class Members do not exercise the skill and initiative of a person in business for oneself;

63.  Plaintiff, the Collective Members and the Class Members do not have the opportunity to exercise the business skills and initiative necessary to elevate their status to that of an independent contractor: they own no enterprise, nor do they maintain a separate business structure or facility.

64.  Plaintiff, the Collective Members and the Class Members have no control over customers, nor do they actively participate in any efforts to increase Defendants' customer base or profit, or to improve business in any capacity.

65.  Defendants do not permit Plaintiff, the Collective Members and the Class Members to hire or subcontract other qualified individuals to provide additional auto services to customers, thereby increasing their revenue, as an independent contractor in business for oneself would have the authority to do.

**Facts Establishing Relative Investment**

66.  Plaintiff's, the Collective Members' and the Class Members' relative investment is minor when compared to the investment made by Defendants.

67.  Plaintiff, the Collective Members and Class Members make no financial investment in Defendants' facilities, advertising, maintenance, staffing, and contractual relationships.  All capital investment and risk belongs to Defendants.

68.     Plaintiff's, the Collective Members' and the Class Members' investment is limited to the phone necessary to receive Defendants' dispatch calls.  Absent Defendants' investment and provision of the business, the Drivers would not earn anything.

**Facts Establishing Opportunity for Profit and Loss**

69.     Defendants manage all aspects of the business operation, including without limitation attracting investors, establishing business and customer relationships, maintaining the premises, establishing the hours of operation, coordinating advertising, and hiring and controlling of staff.  Defendants provide all necessary capital to open and operate the business.

70.     Plaintiff, the Collective Members and the Class Members have no responsibility for any aspect of Defendants' ongoing business risk.

71.     Plaintiff, the Collective Members and the Class Members earn a flat predetermined rate and have no opportunity to share in the profits or loss incurred by Defendants in the operation of their business.

**Facts Establishing Permanency**

72.     Plaintiff began working for Defendant in July 2021 and worked for Defendants for approximately seven (7) consecutive months.

73.     Plaintiff, the Collective Members and the Class Members have worked in excess of forty (40) hours per week in their work for Defendant.

74.     Plaintiff held no other employment during his time working for Defendants.

75.     Defendants require Plaintiff, the Collective Members and the Class Members to work so many hours that it would be virtually impossible for Plaintiff, the Collective Members and the Class Members to hold any other employment.

76.     Plaintiff, the Collective Members and the Class Members work for Defendants is not intended to be temporary or seasonal

**Fact Establishing that Defendants' Driers are Integral to Defendants' Business**

77.     Plaintiff, the Collective Members and the Class Members are critical to Defendants' success.  Defendants' operation is wholly dependent on having Plaintiff , the Collective Members and the Class Members accessible and available to fulfill the roadside service needs of Defendants' customers.

78.     The primary service that Defendants are in business to sell consists of the roadside services provided by Plaintiff, the Collective Members and the Class Members.

79.     Without the work of its Drivers, Defendants would necessarily have no product to sell.

**Facts Establishing that Defendant's Acts Were Willful**

80.     All actions and agreements by Defendants described herein were willful and intentional, and they were not the result of mistake or inadvertence.

81.     Defendants were aware that the FLSA applies to its business at all relevant times and that, under the economic realities test applicable to determining employment status under those laws, Plaintiff, the Collective Members and the Class Members were misclassified as independent contractors.

82.     Drivers under conditions similar to those employed with Defendants have been determined to be employees–not independent contractors–in other FLSA cases.

83.     Despite this notice of their violations, and in an effort to enhance Defendants' profits, Defendants continued to intentionally misclassify Plaintiff, the Collective Members and the Class Members, and knowingly suffered or permitted them to work in excess of 40 hours during

a workweek without paying them overtime compensation at a rate of one and one-half times their regular rate. Such conduct was intentional, unlawful, fraudulent, deceptive, unfair, and contrary to public policy.

## INJURY AND DAMAGE

84. Plaintiff, the Collective Members and the Class Members suffered harm, injury, and damages, including financial loss, as a result of Defendants' conduct complained of herein.

85. Plaintiff, the Collective Members and the Class Members were entitled to minimum wage and overtime pay for their work performed for Defendants, and were entitled to have necessary expenditures or losses reimbursed by Defendants. By failing to pay Plaintiff, the Collective Members and the Class Members minimum wage and overtime pay and interfering with their right to retain all of their earnings, Defendants injured Plaintiff, the Collective Members and the Class Members and caused them financial loss, harm, injury, and damage.

## FLSA COLLECTIVE ACTION ALLEGATIONS

86. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

87. Plaintiff brings the FLSA claims in this action as a collective action under 29 U.S.C. § 216(b).

88. Plaintiff asserts those claims on behalf of himself, and on behalf of all similarly situated Driers of Defendants, who were not paid all minimum wage or overtime compensation required by the FLSA during the relevant time period as a result of Defendant's compensation policies and practices.

89. Plaintiff seeks to notify the following individuals of their rights under 29 U.S.C. § 216(b) to join this action by filing in this Court written notice of their consent to join this action:

-14-

> **All Driers (or individuals with other similar job duties or titles) who worked for Defendants while being classified as an independent contractor at any point from three years prior filing their consent to join this lawsuit through the present.**

90.     Upon information and belief, Defendants have employed more than 100 Drivers during the period relevant to this action.

91.     The identities of these individuals, as a group, are known only to Defendants. Because the numerous members of this collective action are unknown to Plaintiff, joinder of each member is not practicable.

92.     Because these similarly situated Drivers are readily identifiable by Defendants and may be located through their records, they may be readily notified of this action and allowed to opt into it pursuant to 29 U.S.C. § 216(b), for the purpose of collectively adjudicating their FLSA claims.

93.     Collective adjudication is appropriate in this case because the individuals whom Plaintiff wishes to notify of this action have been employed in positions similar to Plaintiff; have performed work similar to Plaintiff; and have been subject to compensation practices similar to those to which Plaintiff has been subjected, including unlawful misclassification as an independent contractor and failure to pay overtime as required by the FLSA.

## CLASS ACTION ALLEGATIONS

94.     Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

95.     Plaintiff brings his IWPCA claims as a Rule 23 class action on behalf of the following IWPCA Class Members:

> **All Drivers (or individuals with other similar job duties or titles) who worked for Defendants in the State of Illinois at any point from ten years prior to the filing of this Complaint to the present.**

96.     Plaintiff brings his IMWL claims as a Rule 23 class action on behalf of the following IMWL Class Members:

> **All Driers (or individuals with other similar job duties or titles) who worked for Defendants in the State of Illinois while being classified as an independent contractor at any point from three years prior filing their consent to join this lawsuit through the present.**

97.     <u>Numerosity</u>.  The number of Class Members is believed to be over one hundred. This volume makes bringing the claims of each individual Class Member before this Court impracticable.  Likewise, joining each individual Class Member as a plaintiff in this action is impracticable.   Furthermore, the identity of the Class Members will be determined from Defendant's records, as will the compensation paid to each of them.  As such, a class action is a reasonable and practical means of resolving these claims.  To require individual actions would prejudice the Class Members and Defendant.

98.     <u>Typicality</u>.  Plaintiff's IMWL and IWPCA claims are typical of the Class Members because like the Class Members, Plaintiff was subject to Defendant's uniform policies and practices and was compensated in the same manner as the Class Members.  Defendant regularly required Plaintiff and the Class Members to work in excess of 40 hours in a given workweek without paying them minimum wage or overtime.  Defendants misclassified Plaintiff and the Class Members as independent contractors.  Defendants similarly failed to reimburse Plaintiff and the Class Members for all necessary expenditures or losses incurred by them within their scope of employment and directly related to services performed for Defendants.

99.     <u>Adequacy</u>.  Plaintiff is a representative party who will fairly and adequately protect the interests of the Class Members because it is in his interest to effectively prosecute the claims in this Complaint in order to obtain the unpaid wages and penalties required under Illinois law.

Plaintiff has retained attorneys who are competent in both class actions and wage and hour litigation. Plaintiff does not have any interest that may be contrary to or in conflict with the claims of the Class Members he seeks to represent.

100. <u>Commonality</u>. Common issues of fact and law predominate over any individual questions in this matter. The common issues of fact include, but are not limited to:

      a.      The number of hours worked by Plaintiff and the Class Members;

      b.      The amounts paid to Plaintiff and the Class Members;

      c.      The degree of control Defendants exerted over Plaintiff and the Class Members;

      d.      The relative investments of Defendants compared to Plaintiff and the Class Members;

      e.      The degree to which Plaintiff's and the Class Members' opportunity for profit and loss was determined by Defendants;

      f.      The skill and initiative required in performing the job;

      g.      The permanency of the relationship; and

      h.      The degree to which Plaintiff's and the Class Members' tasks are integral to Defendants' business.

101. Common issues of law include, but are not limited to:

      a.      Whether Defendants paid all minimum wages due and owing to Plaintiff and the Class Members;

      b.      Whether Defendants paid overtime wages due and owing to Plaintiff and the Class Members for all hours worked in excess of 40 in a given workweek;

c.    Whether Defendants improperly misclassified Plaintiff and the Class Members as independent contractors;

d.    Whether Defendants failed to reimburse Plaintiff and the Class Members for necessary business expenditures or losses incurred while performing their job for Defendants;

e.    Whether Plaintiff and the Class Members are entitled to compensatory damages;

f.    The proper measure of damages sustained by Plaintiff and the Class Members; and

g.    Whether Defendants' actions were "willful."

102.    Superiority.  A class action is superior to other available means for the fair and efficient adjudication of this lawsuit.  Even in the event any of the Class Members could afford to pursue individual litigation against Defendants, doing so would unduly burden the system. Individual litigation would magnify the delay and expense to all parties and burden the court system with duplicative lawsuits.  Prosecution of separate actions by individual Class Members would create the risk of inconsistent or varying judicial results and establish incompatible standards of conduct for Defendants.

103.    A class action, by contrast, presents far fewer management difficulties and affords the benefits of uniform adjudication of the claims, financial economy for the parties, and comprehensive supervision by a single court and Judge.  By concentrating this litigation in one forum, judicial economy and parity among the claims of individual Class Members are promoted. Additionally, class treatment in this matter will provide for judicial consistency. The identities of the Class Members are readily identifiable from Defendants' records.

104.    This type of case is well-suited for class action treatment because: (1) Defendants' practices, policies, and/or procedures were uniform; (2) the burden is on each Defendant to prove it properly compensated its employees; and (3) the burden is on each Defendant to accurately record hours worked by employees.

105.    Ultimately, a class action is a superior forum to resolve the Illinois state law claims set forth in this Complaint because of the common nucleus of operative facts centered on the continued failure of Defendants to pay Plaintiff and the Class Members according to applicable Illinois laws.

106.    <u>Nature of Notice to be Proposed</u>.    As to the Rule 23 Class Members, it is contemplated that notice would be issued giving putative class members an opportunity to opt out of the class if they so desire, *i.e.* an "opt-out notice."  Notice of the pendency and resolution of the action can be provided to the Class Members by mail, electronic mail, print, broadcast, internet, and/or multimedia publication.

**COUNT ONE: FAIR LABOR STANDARDS ACT
FAILURE TO PAY MINIMUM WAGE AND OVERTIME**

107.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

108.    By misclassifying Plaintiff and the Collective Members as independent contractors and paying them a flat rate of $9.00 to $11.00 per service call, Defendants did not pay Plaintiff and the Collective Members the minimum wage required by the FLSA.

109.    By failing to reimburse Plaintiff and the Collective Members for gas, mileage, maintenance, and other necessary expenditures incurred in their work for Defendants, Defendants did not pay Plaintiff and the Collective Members the minimum wage required by the FLSA. *See* 29 C.F.R. § 531.35.

110.    By misclassifying Plaintiff and the Collective Members as independent contractors and paying them a flat rate of $9.00 to $11.00 per service call and requiring Plaintiff and the Collective Members in excess of forty hours per week, Defendants did not pay Plaintiff and the Collective Members the overtime wages required by the FLSA.

111.    By misclassifying Plaintiff and the Collective Members as independent contractors, paying them a flat rate of $9.00 to $11.00 per service call, requiring Plaintiff and the Collective Members in excess of forty hours per week, and failing to reimburse them for gas, mileage and necessary expenditures incurred in their work for Defendants, Defendants did not pay Plaintiff and the Collective Members the overtime wages required by the FLSA.

112.    Defendants knew that – or acted with reckless disregard as to whether – their failure to pay Plaintiff and the Collective Members the proper minimum wage and overtime rates detailed herein would violate federal and state law, and Defendants were aware of the FLSA's minimum wage and overtime requirements during Plaintiff's and the Collective Members' employment. As such, Defendant's conduct constitutes a willful violation of the FLSA.

113.    Plaintiff and the Collective Members are therefore entitled to compensation for the unpaid minimum wages, unreimbursed expenses, and unpaid overtime wages at an hourly rate, to be proven at trial, plus an additional equal amount as liquidated damages, together with interest, reasonable attorney's fees, and costs.

## COUNT TWO: ILLINOIS MINIMUM WAGE LAW
## FAILURE TO PAY MINIMUM WAGE AND OVERTIME

114.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

115. By misclassifying Plaintiff and the IMWL Class Members as independent contractors and paying them a flat rate of $9.00 to $11.00 per service call, Defendants did not pay Plaintiff and the IMWL Class Members the minimum wage required by the IMWL.

116. By failing to reimburse Plaintiff and the IMWL Class Members for gas, mileage, maintenance, and other necessary expenditures incurred in their work for Defendants, Defendants did not pay Plaintiff and the IMWL Class Members the minimum wage required by the IMWL. *See* 29 C.F.R. § 531.35.

117. By misclassifying Plaintiff and the IMWL Class Members as independent contractors and paying them a flat rate of $9.00 to $11.00 per service call and requiring Plaintiff and the IMWL Class Members in excess of forty hours per week, Defendants did not pay Plaintiff and the IMWL Class Members the overtime wages required by the IMWL.

118. By misclassifying Plaintiff and the IMWL Class Members as independent contractors, paying them a flat rate of $9.00 to $11.00 per service call, requiring Plaintiff and the IMWL Class Members in excess of forty hours per week, and failing to reimburse them for gas, mileage and necessary expenditures incurred in their work for Defendants, Defendants did not pay Plaintiff and the IMWL Class Members the overtime wages required by the IMWL.

119. Defendants knew that – or acted with reckless disregard as to whether – their failure to pay Plaintiff and the IMWL Class Members the proper minimum wage and overtime rates detailed herein would violate federal and state law, and Defendants were aware of the IMWL's minimum wage and overtime requirements during Plaintiff's and the IMWL Class Members' employment. As such, Defendant's conduct constitutes a willful violation of the IMWL.

120. Plaintiff and the IMWL Class Members are therefore entitled to compensation for the unpaid minimum wages, unreimbursed expenses, and unpaid overtime wages at an hourly rate,

to be proven at trial, plus an additional equal to two times all unpaid minimum wages, unreimbursed expenses and unpaid overtime wages as treble damages, together with IMWL statutory interest, reasonable attorney's fees, and costs.

### COUNT THREE: ILLINOIS WAGE PAYMENT AND COLLECTION ACT FAILURE TO REIMBURSE NECESSARY EXPENDITURES AND LOSSES

119.    Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs.

120.    Under the IWPCA, "[a]n employer shall reimburse an employee for all necessary expenditures or losses incurred by the employee within the employee's scope of employment and directly related to services performed for the employer." 820 ILCS 115/9.5(a). Defendants violated the IWPCA by failing to reimburse Plaintiff and the IWPCA Class Members for gas, mileage, maintenance and other expenses necessary to perform their job duties for Defendants.

121.    As a result, Defendants have intentionally failed and/or refused to pay Plaintiff and the IWPCA Class Members according to the provisions of the IWPCA.

122.    Defendants willfully failed and/or refused to pay Plaintiff and the IWPCA Class Members according to the provisions of the IWPCA.

123.    Although at this stage, Plaintiff and the IWPCA Class Members are unable to state the exact amount owed for all time worked during the course of their employment, Plaintiff and the IWPCA Class Members believe that such information will become available during the course of discovery.

124.    Plaintiff and the IWPCA Class Members are therefore entitled to payment of all unreimbursed expenses, plus statutory damages and interest, reasonable attorney's fees, and costs.

WHEREFORE, Plaintiff, Alexey Chacon , individually, and on behalf of all other similarly situated persons, requests that this Court grant the following relief in Plaintiff's, the Collective Members' and the Class Members' favor, and against Defendants:

A.     For the Court to declare and find that the Defendants committed one or more of the following acts:

     i.     violated the minimum wage and overtime provisions of the FLSA, by failing to pay proper minimum and overtime wages;

     ii.     willfully violated the minimum wage and overtime provisions of the FLSA;

     iii.     violated the minimum wage and overtime provisions of the IMWL by failing to pay proper minimum and overtime wages;

     iv.     willfully violated the minimum wage and overtime provisions of the IMWL;

     v.     violated reimbursement provisions of the IWPCA; and

     vi.     willfully violated the reimbursement provisions of the IWPCA;

B.     For the Court to award damages in the amounts of all unpaid overtime wages and unreimbursed expenses due and owing to Plaintiff, the Collective Members and the Class Members;

C.     For the Court to award compensatory damages, including liquidated damages and treble damages, in amounts to be determined at trial;

D.     For the Court to award prejudgment and post-judgment interest on any damages awarded;

E.      For the Court to award all statutory damages, interest attorney fees and costs owed to Plaintiff and the Class Members under the FLSA, IMWL and IWPCA.

F.      For the Court to provide a reasonable incentive award for Plaintiff to compensate him for the time she spent attempting to recover wages for the Collective Members and for the risks she took in doing so; and

G.      Such other relief as this Court deems just and proper

## DEMAND FOR JURY TRIAL

Plaintiffs, the Collective Members and the Class Members demand a jury trial on all causes of action and claims with respect to which they each have a state and/or federal constitutional right to a jury trial.

Respectfully submitted,

s/ *Michael L. Fradin*
Michael L. Fradin, Esq.
8401 Crawford Ave. Ste. 104
Skokie, IL 60076
Telephone: 847-986-5889
Facsimile: 847-673-1228
Email: mike@fradinlaw.com

By: /s/ *James L. Simon*
James L. Simon (*pro hac vice* forthcoming)
THE LAW OFFICES OF SIMON & SIMON
5000 Rockside Road
Liberty Plaza – Suite 520
Independence, OH 44131
Telephone: (216) 525-8890
Email: james@bswages.com